IN THE MATTER OF THE EDUCATION OF KATHRYN DIANNE LINDER v. WAKE COUNTY BOARD OF EDUCATION AND THE NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION AND ITS CHIEF ADMINISTRATIVE OFFICER, A. CRAIG PHILLIPS, INTERVENORS

No. 8010SC527

(Filed 20 January 1981)

**Schools § 1— child with special educational needs — assignment to private school — responsibility for tuition — no standing of parents to raise issue**

The parents of a child with special educational needs failed to establish that their child was about to be denied continuance in a program appropriate to her special needs within the meaning of G.S. 115-179.1 (a) and did not have standing to raise the issue of whether the Wake County Board of Education or the Department of Human Resources is responsible for tuition expenses of their child at a private school for handicapped children to which their child had been assigned by the Wake County School System.

APPEAL by respondent from *Canaday, Judge.* Judgment entered 22 February 1980 in Superior Court, WAKE County. Heard in the Court of Appeals on 4 December 1980.

Linder v. Board of Education

Kathryn Dianne Linder is a child with special needs within the meaning of G.S. 115-366. In May 1978, she was presented to the Wake County School System for enrollment for the 1978-79 school year. An individualized educational program was developed for her, recommending placement in the Frankie Lemmon Memorial Preschool (hereinafter Frankie Lemmon School). *See* G.S. 115-375. The Director of Special Programs for the Wake County Public School System, upon finding that the public schools did not have an appropriate program for Kathryn, elected to place her in the Frankie Lemmon School for 1978-79. *See* G.S. 115-367.

Frankie Lemmon School is a private non-profit corporation supported in part by State funds from the Wake Area Mental Health Center and the Department of Human Resources. The preschool is also considered an agency of the Department of Human Resources for the purpose of offering programs to handicapped children. In this capacity, it is eligible to receive, and did receive for the 1978-79 school year, federal funds for the handicapped pursuant to Pub. L. No. 89-313, 20 U.S.C. § 241 c (a) (5) (1970) [current version at 20 U.S.C. § 2771 (Supp. 1978)]. For the purpose of securing funds and services for handicapped children under the Pub. L. No. 89-313 program, the Department of Human Resources and the Frankie Lemmon School certified in October 1978 that Frankie Lemmon School was a state-supported school and that the Department of Human Resources had direct responsibility for providing a free public education to the handicapped children reported in the annual survey of average daily attendance of handicapped children in schools operated or supported by state agencies. Kathryn Dianne Linder was one of the children counted by Frankie Lemmon School in the annual survey for funding through the Pub. L. No. 89-313 program during the 1978-79 school year.

[3] With regard to the 1960 judgment creating a canal corporation, the evidence presented at trial was insufficient to justify a directed verdict in defendant's favor on this ground. The only evidence at trial relating to the canal corportion was that a judgment had been entered

The Wake County Board of Education appears to be the "local educational agency" charged with providing Kathryn Dianne Linder with a free appropriate special education under G.S. 115-367 (i). The Wake County School System provided at its own expense transportation and speech therapy services for the child, but refused to pay her tuition on the grounds that, since the Department of Human Resources receives the Pub. L. No. 89-313 funds attributable to Kathryn Dianne Linder on the basis of their direct responsibility for her education, that education should be paid for out of those Pub. L. No. 89-313 funds.

The Frankie Lemmon School faced serious financial difficulties in 1978 and it was feared that the school would go bankrupt. The Linders requested a due process hearing pursuant to G.S. 115-179.1 to review the Wake County School Board's decision not to pay Frankie Lemmon School for Kathryn's tuition.

After a hearing before a local hearing officer at which the foregoing undisputed facts were brought out, a decision was rendered that as between the Wake County School Board and the Linders, the School Board was obligated to pay Kathryn's tuition.

The School Board appealed this decision. The hearing officer for the State Superintendent of Public Instruction reversed the decision of the local hearing officer, dismissing the case on the ground that the Linders lacked standing to complain about the funding of their daughter's education and that the question of funding was beyond the scope of the due process hearing provided in G.S. 115-179.1.

The Linders appealed the case to the Superior Court pursuant to G.S. 115-179.1 (g) where the State reviewing officer's decision was reversed and judgment was entered requiring Wake County School Board to pay Kathryn Linder's tuition for the 1978-79 school year.

*Attorney General Edmisten by Assistant Attorney General Kaye R. Webb for the North Carolina Department of Public Instruction; and Tharrington, Smith & Hargrove by George T. Rogister, Jr., for the Wake County Board of Education, respondent appellants.*

*Johnson, Gamble & Shearon by David R. Shearon for petitioner appellees.*

CLARK, Judge.

This Court reverses the judgment of the Superior Court and remands this case for dismissal. No judgment should have been entered in this case for the reason that the petitioners in the original hearing, the parents of Kathryn Dianne Linder, lacked standing.

The Linders clearly have no stake in the funds themselves. Even if no governmental entity ever provided necessary funds, the parents of a special child such as Kathryn could never, under present law, be charged with the expenses of providing that child with an appropriate education. G.S. 115-363 and -364. Whether the Linders win or lose this case, then, their economic situation will not change. They will receive

no funds; they will pay out no funds. They argue, however, that the issue in which they have a justiciable interest is not who pays the money, but whether their daughter continues to receive the "free appropriate publicly supported education" to which she is entitled. G.S. 115-363. They argue that their daughter will be denied an appropriate education unless the issue of who pays for it is resolved.

The parents claim standing to raise the issue of what governmental entity is responsible to the Frankie Lemmon School for their daughter's education expenses by virtue of G.S. 115-179.1 (a), which provides for review "of an . . . omission by State or local authorities on the ground that the child . . . is about to be: (1) Denied . . . continuance in a program appropriate to his condition and needs . . . ." They argue that Frankie Lemmon School is the only school in the area equipped to provide their child with the appropriate education that is her right, G.S. 115-363 and -364, and further that the school might be forced to close its doors if it does not receive funds from either the Wake County Board of Education or the State Department of Human Resources. They contend that this statute confers on them standing to appeal the decision of the Wake County School Board not to pay the Frankie Lemmon School for their daughter's education because the decision threatens their daughter's continuance in the Frankie Lemmon School. We disagree.

The statute under which the Linders claim standing provides clear guidelines for notice to parents of any impending denial of a program appropriate to their child's special educational needs. G.S. 115-179.1 (b). The Linders did not allege receipt of such notice, and they admitted at the oral arguments on this case that their child had in fact received her free and appropriate education in the Frankie Lemmon School, both in the school year in which this action was commenced and in the two school years since its commencement.

The same statute which establishes the responsibility of the State to provide "special education and related services appropriate to all children with special needs," also provides that the responsible governmental unit must develop and administer an appropriate program only if the same service is not being provided by existing facilities. G.S. 115-367 (a). This provision seeks only to avoid useless duplication of programs, and in no way relieves the State of its responsibility for Kathryn Linder's education. Since the Frankie Lemmon School offered a program appropriate to Kathryn Linder's needs, it would be

useless duplication for either Wake County or the State Department of Human Resources to develop an identical program of its own. If, however, the Frankie Lemmon School closed its doors, one of these entities would be statutorily required to provide to Kathryn Linder the education she now receives from the Frankie Lemmon School. We think that only if no such program were then developed would Kathryn Linder actually be denied her free and appropriate education. We believe further that, since the Frankie Lemmon School has at all times in the past and is currently providing Kathryn with an appropriate education, any decision by us of which State agency might be required to develop such a program would be premature and in the nature of an advisory opinion.

The Linders' claims of standing are all based on the erroneous premise that if the Frankie Lemmon School closes its doors, it will be impossible for the State to provide their daughter with an appropriate education. We believe that Kathryn Linder's right is to a free and appropriate education, and not necessarily to an education at the Frankie Lemmon School. The continuance of the Frankie Lemmon School is irrelevant to the continuance of Kathryn Linder's appropriate education in light of the mandate of G.S. 115-367 (a) that the responsible governmental entity directly provide an appropriate program if no private agency offers such program. The unavailability of an appropriate education elsewhere in Wake County is a direct consequence of its availability through the Frankie Lemmon School. The Linders have advanced no basis for believing that the State would have failed to follow the mandate of G.S. 115-367 (a) if no private agency capable of providing the required services existed, and thus have failed to establish that their child was about to be denied continuance in a program appropriate to her special needs under G.S. 115-179.1 (a).

We note in closing that any review by us of the merits of the Linders' claim is rendered moot by the admission of the parties at the oral arguments on this matter that the educational expenses of Kathryn Dianne Linder for the 1978-79 school year have since been paid at no cost to the parents.

The judgment is reversed and the case remanded to the Superior Court for dismissal.

Judges HEDRICK and WHICHARD concur.